# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW TURNER,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>REAL TIME RESOLUTIONS, INC., et al.,<br><br>　　　　　　　　　　Defendants. | Case No. 22-cv-1121-MMA (WVG)<br><br>**ORDER GRANTING DEFENDANT SPECIALIZED LOAN SERVICING, LLC'S MOTION TO DISMISS AND**<br><br>[Doc. No. 3]<br><br>**GRANTING DEFENDANT REAL TIME RESOLUTIONS, INC.'S MOTION TO DISMISS**<br><br>[Doc. No. 4] |

  On May 19, 2022, Plaintiff Matthew Turner initiated an action in the Superior Court of California, County of Orange against Defendants Real Time Resolutions, Inc. ("RTR"), Specialized Loan Servicing, LLC ("SLS"), and Does 1–50. *See* Doc. No. 1-1 ("Compl."). On August 1, 2022, SLS removed the action to this Court, *see* Doc. No. 1, and RTR joined in the removal, *see* Doc. No. 1-3. Both SLS and RTR now move to dismiss. *See* Doc. Nos. 3, 4. Both motions are fully briefed, *see* Doc. Nos. 5–7, 9, and

the Court took the matters under submission and without oral argument pursuant to Civil Local Rule 7.1.d.1, *see* Doc. Nos. 8, 10. For the reasons set forth below, the Court **GRANTS** SLS's motion and **GRANTS** RTR's motion.

## I. Background[1]

Plaintiff is the owner of the real property located at 2906 Rancho Rio Chico, Carlsbad, California 92002 (the "Property"). Compl. ¶ 5. Plaintiff purchased the Property in 1999 and has used it as his home and primary residence ever since. *Id.* ¶ 12. In November 2006, Plaintiff obtained a Home Equity Line of Credit with a credit limit of $100,000 secured by the Property pursuant to a Deed of Trust dated November 7, 2006 (the "HELOC Loan"). *Id.* ¶ 13. The section 4 of the HELOC Loan Agreement provides:

> A. "I promise to pay to your order, when and as due, all loans made under this Agreement . . . I agree to make my payments in the manner specified in my periodic statement, and if I do so such payments will be credited as of the day of receipt."
> B. "At a minimum, you will send me a periodic statement monthly, except that my first periodic statement may be generated and mailed to me between thirty and sixty days after I open my Account. The periodic statement will show all Account activity during the billing cycle and contain other important information including my "New Balance," my Annual Percentage Rate, the amount of my "Minimum Payment Due," my "Payment Due Date" and the place and manner of making payments."

*Id.* ¶ 14.

Eventually, Plaintiff fell into financial hardship and, struggling to make payments, he filed for bankruptcy in 2009. *Id.* ¶ 15. Plaintiff's bankruptcy proceedings concluded in April 2009. *Id.*

---

[1] Because this matter is before the Court on a motion to dismiss, the Court must accept as true the allegations set forth in the Complaint. *See Hosp. Bldg. Co. v. Trs. of Rex Hosp.*, 425 U.S. 738, 740 (1976).

Case 3:22-cv-01121-MMA-WVG   Document 11   Filed 10/24/22   PageID.152   Page 3 of 20

In a notice dated February 16, 2010, Bank of America, N.A., who had been the servicer of Plaintiff's HELOC Loan, through its subsidiary, BAC Home Loans Servicing, LP, notified Plaintiff that the servicing of the HELOC Loan was being assigned, sold, or transferred to RTR effective February 25, 2010 (the "Assignment Notice"). *Id.* ¶ 17. The Assignment Notice stated that RTR would begin accepting monthly payments on the HELOC Loan as of February 21, 2010, and would send billing statements going forward. *Id.* Plaintiff maintains that he did not receive the Assignment Notice until 2019, after he submitted a Qualified Written Request ("QWR"). *Id.*

In response to Plaintiff's QWR, RTR provided Plaintiff with three pages from a seventeen (17) page Collection Agreement between RTR and SLS (the "Collection Agreement"). *Id.* ¶ 18. The Collection Agreement dated February 1, 2013, states that SLS is the servicer of the HELOC Loan and that RTR is retained as its subcontractor with respect to collection and recovery. *Id.* ¶ 19.

Generally speaking, Plaintiff alleges that Defendants have presented conflicting information as to which entity held the servicing rights to Plaintiff's HELOC Loan and at what point in time. *Id.* ¶ 20. Plaintiff maintains that RTR and SLS were engaged in litigation from 2016 through 2021 concerning the servicing under the Collection Agreement. *Id.* ¶ 21. Plaintiff also contends that Defendants failed to provide periodic statements to him as required, and that he received little correspondence from RTR, specifically. *Id.* ¶ 22.

In October 2018, Plaintiff submitted a QWR to RTR. *Id.* ¶ 24. Plaintiff contends that RTR's response was inadequate. *Id.* RTR provided Plaintiff with a payoff quote on October 4, 2018, which included a payoff amount of $153,445.37 including a principal of $100,000, interest of $52,715.61, and fees of $729.76, with an interest rate of 6.25%. *Id.* ¶ 25. Plaintiff also received a statement dated January 1, 2019, showing that he owed $69,939.39 in arrears with an interest rate of 7.25%. *Id.* ¶ 26.

On May 3, 2019, Plaintiff submitted a second QWR. *Id.* ¶ 27. RTR did not supplement or otherwise "rectify" their prior response. *Id.*

-3-                                    22-cv-1121-MMA (WVG)

On August 31, 2021, Plaintiff received notice from a foreclosure trustee acting on behalf of RTR, noting that the principal balance on the HELOC Loan was $170,858.84 and that RTR intended to proceed with foreclosure if Plaintiff did not reinstate the account by paying some $101,000 within 30 days. *Id.* ¶ 28.

In October 2021, Plaintiff sent a third QWR, and RTR again declined to supplement or otherwise rectify their prior response. *Id.* ¶ 29.

On January 19, 2022, Defendants recorded a Notice of Default against the Property, noting that Plaintiff was $106,000 in default. *Id.* ¶ 30. On May 11, 2022, Defendants recorded a Notice of Trustee's Sale against the Property, setting the sale date of June 6, 2022, and noting a $175,809.93 unpaid balance. *Id.* ¶ 31.

As a result, Plaintiff brings five causes of action: (1) breach of contract against both Defendants; (2) violation of California Civil Code § 2924c-d against both Defendants; (3) violation of 12 U.S.C. §§ 2605 *et seq.* against Defendant RTR; (4) unfair competition in violation of California Business and Professions Code §§ 17200 *et seq.* against both Defendants; and (5) violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692e against both Defendants.

## II. LEGAL STANDARD

A Rule 12(b)(6)[2] motion tests the legal sufficiency of the claims made in a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). However, plaintiffs must also plead "enough facts to state a claim to relief that is plausible on its face." Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard demands more than "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

---

[2] Unless otherwise noted, all "Rule" references are to the Federal Rules of Civil Procedure.

(internal quotation marks omitted).  Instead, the complaint "must contain allegations of underlying facts sufficient to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In reviewing a motion to dismiss under Rule 12(b)(6), courts must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996).  The court need not take legal conclusions as true merely because they are cast in the form of factual allegations.  *See Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987).  Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

Where dismissal is appropriate, a court should grant leave to amend unless the plaintiff could not possibly cure the defects in the pleading.  *See Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)).

### III. REQUESTS FOR JUDICIAL NOTICE

As an initial matter, both RTR and SLS have filed requests for judicial notice in conjunction with their motions.  *See* Doc. Nos. 3-1, 4-2.  Plaintiff has not responded or otherwise opposed either request.

Generally, the scope of review on a motion to dismiss for failure to state a claim is limited to the contents of the complaint.  *See Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1141 n.5 (9th Cir. 2003).  However, a court may consider certain materials, including matters of judicial notice, without converting the motion to dismiss into a motion for summary judgment.  *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.  Fed. R. Evid. 201(b); *see also Khoja v. Orexigen*

*Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (quoting Fed. R. Evid. 201(b)). Further, "a court may consider evidence on which the complaint necessarily relies if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (quoting *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (internal quotation marks omitted)).

SLS asks the Court to judicially notice seven exhibits: (1) Deed of Trust recorded on November 13, 2006; (2) Bankruptcy Court Order granting discharge under 11 U.S.C. § 727 entered on April 7, 2009, in the United States Bankruptcy Court, case number 09-00054-LA7; (3) Assignment of Deed of Trust recorded on October 28, 2021; (4) Substitution of Trustee recorded on November 13, 2006; (5) Notice of Default and Election to Sell Under Deed of Trust recorded on January 19, 2022; (6) Notice of Trustee's Sale recorded on May 11, 2022; and (7) Notice of Rescission of Notice of Default recorded on June 10, 2022. RTR asks the Court to judicially notice the same Notice of Rescission of Notice of Default recorded on June 10, 2022 that SLS submits as Exhibit 7.

The Court finds that all seven exhibits are proper for judicial notice as they are all either explicitly or implicitly referenced in the Complaint and are public records whose authenticity is not subject to reasonable dispute. Accordingly, the Court **GRANTS** SLS and RTR's requests.

That said, while the Court may take judicial notice of these exhibits, the Court will not rely on them to the extent they are irrelevant to the issues presented in the motion or are offered in an attempt to "short-circuit the resolution of a well-pleaded claim." *In re Facebook, Inc. Sec. Litig.*, 405 F. Supp. 3d 809, 829–30 (N.D. Cal. 2019).

## IV. DISCUSSION

Both Defendants SLS and RTR move to dismiss all claims against them. The Court addresses each claim as it relates to each Defendant in turn.

## A. Breach of Contract

Plaintiff's first cause of action is for breach of contract against both Defendants. To state a breach of contract claim under California law, a plaintiff must allege "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011) (citing *Reichert v. General Ins. Co.*, 68 Cal. 2d 822, 830 (1968)). Further, "[i]n an action for breach of a written contract, a plaintiff must allege the specific provisions in the contract creating the obligation the defendant is said to have breached." *Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110, 1117 (N.D. Cal. 2011); *see also Miron v. Herbalife Int'l, Inc.*, 11 Fed. App'x. 927, 929 (9th Cir. 2001) ("The district court's dismissal of the [plaintiffs'] breach of contract claims was proper because the [plaintiffs] failed to allege any provision of the contract which supports their claim.").

Both Defendants argue that Plaintiff fails to plead that they are parties to a contract. *See* Doc. Nos. 3 at 5; 4-1 at 4. In opposition, Plaintiff argues that Defendants are servicers on the HELOC Loan and thus in contractual privity as beneficiaries. *See* Doc. Nos. 5 at 6; 6 at 5.

Plaintiff pleads that section 4 of the HELOC Loan Agreement provides:

> you will send me a periodic statement monthly . . . . The periodic statement will show all Account activity during the billing cycle and contain other important information including my "New Balance," my Annual Percentage Rate, the amount of my "Minimum Payment Due," my "Payment Due Date" and the place and manner of making payments.

Compl. ¶ 14; *id.* ¶ 36. Plaintiff further pleads that Defendants failed to provide Plaintiff with any periodic statements. *Id.* ¶ 37.

Even accepting these facts as true, Plaintiff does not plead that either RTR or SLS are signatories to the HELOC Loan Agreement, for example, the "you" in the above quoted provision. Nor does Plaintiff plead that Defendants are parties to the Deed of

Trust.³  Further, the Ninth Circuit has stated that "there is no contractual relationship between a mortgagor and a loan servicer." *Galope v. Deutsche Bank Nat'l Tr. Co.*, 666 F. App'x 671, 674 (9th Cir. 2016).  And courts in this Circuit routinely reject the argument that a borrower may bring a breach of contract claim against a loan servicer under California law.  *See Conder v. Home Sav. of Am.*, 680 F. Supp. 2d 1168, 1174 (C.D. Cal. 2010); *see also Householder v. Specialized Loan Servicing Llc*, No. CV 21-1008-DMG (SKx), 2021 U.S. Dist. LEXIS 246712, at *9 (C.D. Cal. June 3, 2021).  Consequently, the Court **GRANTS** Defendants' motions on this basis.

Defendant RTR also puts forth additional arguments: that Plaintiff was in breach of the HELOC Loan Agreement at the time of RTR's alleged breach, and that the claim is time-barred.  *See* Doc. No. 4-1 at 5.  For the sake of completeness, the Court addresses these arguments as well.

In order to state a claim for breach of contract under California law, a plaintiff must plead their own performance under the contract or excuse for nonperformance.  *See Oasis W. Realty*, 51 Cal. 4th at 821.  RTR is correct that Plaintiff does not plead he had performed under the HELOC Loan Agreement at the time of the alleged breach.  Plaintiff appears to allege an excuse—that he did not make monthly payments on the loan because Defendants failed to send him periodic statements and he "does not even know the identity of the true servicer entitled to receive payments." Compl. ¶ 38.  However, by Plaintiff's own narrative, he was "struggling to make payments" in 2009.  *See id.* ¶ 15.  So even assuming RTR was a successor to the HELOC Loan and Deed of Trust in 2010, *id.* ¶ 17, his non-performance appears to have begun before then, and Plaintiff does not

---

³ To the extent Defendant RTR is a successor to BoA on the Deed of Trust, this allegation is not pleaded.  The Court can only consider facts alleged in the complaint—not facts raised for the first time in opposition to a motion to dismiss.  *See Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss . . . The focus of any Rule 12(b)(6) dismissal—both in the trial court and on appeal—is the complaint.")).

allege he became current on the HELOC Loan after his bankruptcy proceedings concluded. Consequently, Plaintiff fails to plausibly plead the second element of his breach of contract claim as well.

Moreover, to the extent RTR became obligated to send periodic statements under the HELOC Loan Agreement, his claim appears to be time barred. In California, breach of contract claims are subject to a four-year statute of limitations, *see* Cal. Code Civ. P. § 337(a), and Plaintiff's only allegation pertaining to RTR's obligation to send statements suggests that it began in 2010, *see id.* ¶ 17.

Accordingly, the Court **GRANTS** Defendants' motions and **DISMISSES** Plaintiff's first cause of action with leave to amend.

**B.     California Civil Code § 2924c–d**

Second, Plaintiff brings a claim against both Defendants for violation of California Civil Code § 2924c–d. "California Civil Code § 2924 *et seq.* outlines the steps that make up a foreclosure proceeding in the state of California." *Brewster v. Sun Tr. Mortg., Inc.*, 742 F.3d 876, 879 (9th Cir. 2014). Pursuant to section 2924c(a)(1), a mortgagor has the "right to cure a default by paying the amount in default, plus 'reasonable costs and expenses,' thereby reinstating the loan as if the default had not occurred." *Walker v. Countrywide Home Loans, Inc.*, 121 Cal. Rptr. 2d 79, 89 (2002) (quoting Cal. Code Civ. P. § 2924c(a)(1)); *see also Carson v. Bank of Am. NA*, 611 F. App'x 379, 380 (9th Cir. 2015). Moreover, section 2924d provides that "a beneficiary, trustee, mortgagee, or his or her agent, may demand and receive . . . those reasonable costs and expenses . . . that are actually incurred in enforcing the terms of the obligation and trustee's or attorney's fees" that are expressly authorized as a condition to reinstatement. Cal. Code. Civ. P. § 2924d(a)(1).

Plaintiff alleges that Defendants violated both of these provisions "by demanding from Plaintiff exorbitant amounts in arrears based on a $100,000 HELOC." Compl. ¶ 46. Plaintiff pleads that in August 2021, he received correspondence from a foreclosure trustee acting on Defendant RTR's behalf noting a principal balance due of $170,858.84

and a reinstatement amount of over $101,000. *Id.* ¶ 28. Plaintiff further alleges that according to Defendants' May 11, 2022 Notice of Trustee's Sale, "[t]he estimated amount of unpaid balance and other charges was stated to be $175,809.93. *Id.* ¶ 47. Plaintiff maintains that "the amount demanded for the HELOC is grossly inflated and includes a demand for payment of items not permitted by Civil Code § 2924c-d, nor by the HELOC Agreement and Deed of Trust." *Id.* ¶ 50.

In moving to dismiss, both SLS and RTR argue that Plaintiff's allegations relate to figures in the Notice of Trustee's Sale and therefore do not state a claim under California Civil Code § 2924c–d. Doc. No. 3 at 6; Doc. No. 4-1 at 6. Defendants appear to be correct. "Civil Code sections 2924c and 2924d [ ] regulate costs that may be charged to a borrower *only after notices of default and sale have been recorded*." *Walker*, 121 Cal. Rptr. 2d 79, 90 (2002) (emphasis added). Namely, California "Civil Code section 2924c refers to the payment of the amount due as 'shown in the notice of default.'" *Id.* And section 2924d delineates the specific costs and expenses that may be included for reinstatement. Cal. Civ. Code, § 2924d. In opposition, Plaintiff attempts to clarify that his claim is based upon the $106,470.73 in arrears identified in the Notice of Default. Doc. Nos. 5 at 7, 6 at 7. However, this allegation is not in the Complaint and is therefore insufficient to cure his pleading deficiency. *See Schneider*, 151 F.3d at 1197 n.1. Consequently, because Plaintiff fails to plead that either RTR or SLS recorded a notice of default and/or sale that included costs, expenses, or other amounts impermissible under California Civil Code § 2924c–d, the Court **GRANTS** Defendants' motion and **DIMISSES** Plaintiff's second cause of action with leave to amend.

C.   **12 U.S.C. § 2605**

Plaintiff's third cause of action is against RTR for violation of the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. § 2601 *et seq*. ("RESPA"). RESPA seeks to ensure that real estate consumers "are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices that have

developed in some areas of the country." 12 U.S.C. § 2601(a). The statute was then expanded to encompass loan servicing as well as the settlement process. *See Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 665 (9th Cir. 2012) (citing Pub. L. No. 101-165). To this end, RESPA imposes certain duties on loan servicers regarding borrowers' accounts and in response to their inquiries. *See generally* 12 U.S.C. § 2605. In particular, § 2605(e) creates a private right of action for the failure by a loan servicer to comply with the statutory requirements in responding to a QWR for information about the servicing of a loan. 12 U.S.C. § 2605(e).

RTR first challenges the timeliness of Plaintiff's RESPA claim. *See* Doc. No. 4-1 at 6. In opposition, Plaintiff argues that the doctrine of continuing wrong operates to cure his untimeliness. *See* Doc. No. 6 at 7.

Under California law, the doctrine of continuing wrong is an equitable modification to the usual rules governing limitations periods. *See Aryeh v. Canon Bus. Sols., Inc.*, 151 Cal. Rptr. 3d 827, 832 (2013). As one district court has explained:

> "There are two main branches [of the continuing-wrong accrual principles], the continuing violation doctrine and the theory of continuous accrual." *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1197, 151 Cal. Rptr. 3d 827, 292 P.3d 871 (2013). The continuing violation doctrine applies to "injuries [that] are the product of a series of small harms, any one of which may not be actionable on its own" and where "a wrongful course of conduct bec[omes] apparent only through the accumulation of a series of harms." *Id.* at 1197-98. The continuing violation does not apply where a "complaint identifies a series of discrete, independently actionable alleged wrongs." *Id.* at 1198. In contrast, "the continuous accrual doctrine applies whenever there is a continuing or recurring obligation." *Id.* at 1199. But "the theory of continuous accrual supports recovery only for damages arising from those breaches falling within the limitations period." *Id.*

*Kemp v. Wells Fargo Bank, N.A.*, No. 17-cv-01259-MEJ, 2017 U.S. Dist. LEXIS 177032, at *37 n.7 (N.D. Cal. Oct. 25, 2017).

The Court is unaware of any authority supporting application of California's continuing wrong doctrine to a federal cause of action under RESPA. But in any event,

Plaintiff has not pleaded that such a doctrine is applicable. First, as pleaded, each of Plaintiff's QWRs are discrete actionable wrongs and the law is clear that in such a circumstance, the continuing violation doctrine does not apply. Further, although Plaintiff alleges that he sent three QWRs over the span of three years, RTR's obligations to respond under RESPA are not recurring. Consequently, Plaintiff's RESPA claim as pleaded is subject to the statutory statute of limitations.

As Defendant RTR correctly notes, RESPA claims brought pursuant to § 2605 are subject to a three-year statute of limitations. 12 U.S.C. § 2614. Plaintiff filed his Complaint on May 19, 2022. *See* Compl. at 1. Consequently, Plaintiff may only pursue a claim under 12 U.S.C. § 2605 based upon RTR's responses to his QWRs that occurred after May 19, 2019.

Plaintiff pleads that he submitted three QWRs:[4] (1) October 2018, *see* Compl. ¶ 23; (2) May 3, 2019, *see id.* ¶ 27; and (3) October 2021, *see id.* ¶ 29. Although Plaintiff generally pleads that RTR responded to his QWRs, he only pleads the date of RTR's response to his first QWR: October 15, 2018. *See id.* ¶ 24.

Plaintiff's first QWR and RTR's corresponding response are facially untimely. On the other hand, Plaintiff submitted his third QWR in October 2021, and so RTR's response—although unknown—is timely. Plaintiff submitted his second QWR on May 3, 2019. Given the close proximity to the three-year window, and because Plaintiff does not plead the date of RTR's response, the Court is unable to determine whether Plaintiff's second QWR is timely. Nonetheless, because at least one of Plaintiff's QWRs and RTR's corresponding response falls within the statute of limitations window, his RESPA claim is not subject to dismissal in its entirety.

---

[4] Although RTR argues that Plaintiff's second two submissions were not QWRs but merely dispute letters, *see* Doc. No. 4-1 at 7, for the purpose of this motion the Court accepts Plaintiff's allegations that they were QWRs as defined by the statute.

Defendant RTR also argues that Plaintiff fails to state a claim under RESPA. *See* Doc. No. 4-1 at 7. Because the Court finds that Plaintiff's first QWR is facially untimely, the Court addresses the sufficiency of Plaintiff's RESPA claim only to the extent it is based upon the latter two QWRs.

RESPA provides that "[i]f any servicer of a federally related mortgage loan receives a [QWR] from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days[.]" 12 U.S.C. § 2605(e)(1)(A). A QWR is defined as:

> a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that: (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B). "Servicing" is defined as:

> receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in section 2609 of this title, and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan.

12 U.S.C. § 2605(i)(3).

After receiving a QWR, within sixty days, the loan servicer must, if the servicer determines an error in the account, make appropriate corrections to the borrower's account and notify the borrower of the correction in writing. 12 U.S.C. § 2605(e)(2)(A). If the servicer determines that the account is not in error, the servicer must provide the borrower with a written explanation or clarification stating the reasons why the servicer believes the borrower's account is correct. *Id.* § 2605(e)(2)(B). If the request pertains to

a request for information, the servicer must either provide the information to the borrower or explain why such information is unavailable. *Id.* § 2605(e)(2)(C). "RESPA entitles a borrower to actual damages resulting from a failure to respond to a Qualified Written Request (QWR) and statutory damages if the borrower demonstrates a pattern or practice of RESPA violations." *Asare-Antwi v. Wells Fargo Bank, N.A.*, 855 F. App'x 370, 372 (9th Cir. 2021) (citing 12 U.S.C. § 2605(e), (f)(1)).

So far as the Court can surmise, Plaintiff does not assert that RTR's responses were untimely, but instead that they were inadequate and incomplete. *See* Compl. ¶ 60. Plaintiff pleads that RTR failed to provide the "majority" of the requested information and documentation and that the information RTR did provide was "intentionally incomplete." In particular, Plaintiff pleads that RTR provided Plaintiff with three pages of a "Collection Agreement" that was at least nineteen pages. *See id.*

However, Plaintiff fails to plead what information he sought and that such specific information was either not provided, or that RTR did not explain why such information was not available. *See* 12 U.S.C. § 2605(e)(2)(C). Based upon the statute of limitations discussion above, Plaintiff cannot bootstrap his latter two QWRs to the substance of his untimely first QWR.[5] There is simply not enough information regarding Plaintiff's second two QWRs for the Court to conclude that Plaintiff has plausibly pleaded a claim against RTR for violating § 2605. Accordingly, the Court **GRANTS** RTR's motion on this basis.

RTR also argues that Plaintiff fails to plead actual damages. Doc. No. 4-1 at 8. "Damages are a necessary element of a RESPA claim." *Robinson v. Bank of Am., N.A.*, No. 21-cv-00110-AJB-DEB, 2022 U.S. Dist. LEXIS 50429, at *20 (S.D. Cal. Mar. 21, 2022). With respect to § 2605, "[a]lthough [§ 2605(f)] does not explicitly set this out as a

---

[5] To the extent RTR contends that it was not legally required to provide a full copy of the Collection Agreement, *see* Doc. No. 4-1 at 7, the Court declines to reach this argument as Plaintiff does not plead that he requested it in his latter two QWRs.

pleading standard, a number of courts have read the statute as requiring a showing of pecuniary damages in order to state a claim." *Allen v. United Fin. Mortg. Corp.*, 660 F. Supp. 2d 1089, 1097 (N.D. Cal. 2009); *see also Hueso v. Select Portfolio Servicing, Inc.*, 527 F. Supp. 3d 1210, 1223–24 (S.D. Cal. 2021) (finding no RESPA claim where the plaintiff failed to plead damages); *Espinoza v. Recontrust Co.*, No. 09-CV-1687-IEG (RBB), 2010 U.S. Dist. LEXIS 71337, 2010 WL 2775753, at *4–5 (S.D. Cal. July 13, 2010) (same). "Courts have 'liberally' interpreted this requirement." *Fazio v. Experian Info. Sols., Inc.*, No. C 12-00497 CRB, 2012 U.S. Dist. LEXIS 80663, at *13 (N.D. Cal. June 11, 2012) (quoting *Yulaeva v. Greenpoint Mortg. Funding, Inc.*, 2009 U.S. Dist. LEXIS 79094, at *44 (E.D. Cal. Sep. 3, 2009)); *see also Robinson*, 2022 U.S. Dist. LEXIS 50429, at *20.

Plaintiff pleads the following damages as a result of RTR's alleged RESPA violation:

> actual damages including but not limited to, loss of money, losses through overcharges, incurred attorneys' fees and costs to save his home, a loss of reputation and goodwill, destruction of credit, severe emotional distress, frustration, fear, anger, helplessness, nervousness, anxiety, sleeplessness, sadness, and depression, according to proof at trial but within the jurisdiction of this Court. Defendant consciously disregarded Plaintiffs' rights, deliberately breaching their respective duties, showing willful misconduct, malice, fraud, wantonness, oppression, and entire want of care, thus authorizing the imposition of punitive damages.

Compl. ¶ 62.

RESPA § 2605 does not provide for punitive damages. *See* 15 U.S.C. § 2605(f). Moreover, some of the damages Plaintiff seeks may not be recoverable under RESPA. For example, "[t]he Ninth Circuit has not decided whether emotional distress can constitute 'actual damages' for purposes of § 2605(f), and cases are split." *Obot v. Wells Fargo Bank, N.A.*, No. C11-00566 HRL, 2011 U.S. Dist. LEXIS 126843, at *8 (N.D. Cal. Nov. 2, 2011) (collecting cases).

Even assuming Plaintiff adequately pleads actual, pecuniary damages sufficient to survive dismissal, he fails to plead that any such damages were the "direct result of [RTR's] failure to comply." *Lal v. Am. Home Servicing, Inc.*, 680 F. Supp. 2d 1218, 1223 (E.D. Cal. 2010). Courts assessing the damages element of RESPA claims at the dismissal stage routinely hold that a plaintiff must plausibly allege that his actual damages are *attributable* to Defendant's failure to wholly or adequately respond. S*ee, e.g.*, *Robinson*, 2022 U.S. Dist. LEXIS 50429, at *21 ("A plaintiff's failure to allege a pecuniary loss attributable to a servicer's failure to respond to QWRs has therefore been found to be fatal to the claim.") (quoting *Ghuman v. Wells Fargo Bank, N.A.*, 989 F. Supp. 2d 994, 1007 (E.D. Cal. 2013) (internal quotation marks omitted). Nor does Plaintiff plead a pattern or practice of noncompliance with RESPA to plausibly plead an entitlement to statutory damages. Therefore, the Court **GRANTS** RTR's motion on this basis as well.

In sum, Plaintiff fails to plausibly plead what information he sought in his timely QWRs and why RTR's responses were inadequate. Further, Plaintiff does not plausibly plead actual, pecuniary damages attributable to RTR's alleged RESPA violations. Accordingly, the Court **DISMISSES** Plaintiff's RESPA claim with leave to amend.

**D.     California Business and Professions Code § 17200**

Fourth, Plaintiff alleges that both Defendants violated California's Unfair Competition law, California Business and Professions Code § 17200 *et seq.* ("UCL"). The UCL's "coverage is sweeping, embracing anything that can properly be called a business practice and that at the same time is forbidden by law." *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. The UCL provides a separate theory of liability under each of the three prongs: "unlawful," "unfair," and "fraudulent." *See Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (Cal. 1999) (quoting *Podolsky v. First Healthcare Corp.*, 58 Cal. Rptr. 2d 89, 98 (1996)) ("Because

Business and Professions Code section 17200 is written in the disjunctive, it establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent."); *see also Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012) (same).

Under the unlawful prong, the UCL "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Cel-Tech.*, 20 Cal. 4th at 180 (internal quotations omitted). The "unfair prong" requires proving either: (1) a practice that "offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers" and that is "tethered to specific constitutional, statutory or regulatory provisions," *Bardin v. DaimlerChrysler Corp.*, 39 Cal. Rptr. 3d 634, 645 (Cal. Ct. App. 2006) (quotations omitted); or (2) that "the utility of the defendant's conduct [is outweighed by] the gravity of the harm to the alleged victim," *Schnall v. Hertz Corp.*, 93 Cal. Rptr. 2d 439, 456 (Cal. Ct. App. 2000). The "fraudulent" prong of the UCL "require[s] only a showing that members of the public are likely to be deceived," by Defendants' conduct. *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 838 (Cal. 2006).

Plaintiff summarily pleads that he brings his UCL cause of action pursuant to all three prongs. *See* FAC ¶ 64. However, substantively, he only pleads an unlawful UCL violation. *See id.* ¶¶ 65–68. Accordingly, the Court only addresses that theory of liability.

Plaintiff alleges that Defendants violated the UCL's unlawful prong by breaching their contract (both Defendants), FAC ¶ 65, as well as violating Cal. Civ. Code § 2924c–d (both Defendants), *id.* ¶ 65, RESPA (Defendant RTR), *id.* ¶ 67, and the Fair Debt Collection Practices Act (both Defendants), *id.* ¶ 68. As explained above, Plaintiff has not plausibly pleaded claims for breach of contract and violations of California Civil Code § 2924c–d and RESPA. And as will be discussed below, he similarly fails to state a Fair Debt Collection Practices Act claim. Accordingly, the Court **GRANTS** Defendants' motions and **DISMISSES** Plaintiff's UCL claim with leave to amend. *See Herrejon v.*

*Ocwen Loan Servicing, LLC*, 980 F. Supp. 2d 1186, 1206 (E.D. Cal. 2013) (holding that "[a] plaintiff who "cannot state a claim under the 'borrowed' law . . . cannot state a UCL claim either") (quoting *Rubio v. Capital One Bank*, 572 F. Supp. 2d 1157, 1168 (C.D. Cal. 2008), *affirmed in part, reversed in part*, 613 F.3d 1195 (2010)).

### E.     Fair Debt Collection Practices Act

Plaintiff's fifth cause of action is against both Defendants for violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"). Relevantly, the FDCPA provides that a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. A violation occurs pursuant to this statute when a "debt collector" "use[s] . . . any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." *Id.* § 1692e(10). Additionally, a violation may occur when a "debt collector" "[c]ommunicat[e]s or threaten[s] to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." *Id.* § 1692e(8). Further, a "debt collector" may not make a false representation of "the character, amount, or legal status of any debt." *Id.* § 1692e(2)(A).

Plaintiff pleads that both SLS and RTR are "debt collectors because they regularly collect or attempt to collect debts owed or due or asserted to be owed or due to another." FAC ¶ 74. Plaintiff further alleges that Defendants violated the FDCPA "by attempting to collect a debt that was not owed and that could not legally be demanded." *Id.* ¶ 76.

The Court agrees that Plaintiff's pleading of this claim is too vague and conclusory to survive dismissal. Plaintiff may elsewhere allege communications regarding his HELOC Loan, as well as why such amounts included were unauthorized. However, this type of shotgun pleading fails to satisfy Rule 8, which requires, at a minimum, that a complaint allege enough specific facts to provide both "fair notice" of the particular claim being asserted and "the grounds upon which [that claim] rests." *Twombly*, 550 U.S. at 555 (citation and quotation marks omitted). Plaintiff does not clearly identify

what debt collection attempts were made, by whom, and why they are unlawful. To that end, "[w]hile incorporation by reference is a useful tool to streamline pleadings, it is not intended to create guesswork as to which facts support which claims." *Bristol SL Holdings, Inc. v. Cigna Health Life Ins. Co.*, No. SACV 19-00709 AG (ADSx), 2020 U.S. Dist. LEXIS 76342, at *6 (C.D. Cal. Jan. 6, 2020); *see also TV Ears, Inc. v. Joyshiya Dev. Ltd.*, No. 3:20-cv-01708-WQH-BGS, 2021 U.S. Dist. LEXIS 223130, at *37 (S.D. Cal. Nov. 18, 2021) ("Pleadings that make it difficult or impossible for defendants to make informed responses to the plaintiff's allegations are considered impermissible 'shotgun' pleadings.").

Moreover, Plaintiff appears to plead that Defendants violated §§ 1692e(2)(A) (false representation of the character, amount, or legal status of any debt), 1692e(5) (threatening to take action that cannot be legally taken), 1692e(10) (false representation or deceptive means to attempt to collect a debt), and 1692f(1) (attempting to collect an amount not expressly authorized by agreement). However, the Ninth Circuit has explained that only a claim under § 1692e(f)(6) is available in the non-judicial foreclosure context. *See Dowers v. Nationstar Mortg.*, LLC, 852 F.3d 964, 970 (9th Cir. 2017). This because "while the FDCPA regulates security interest enforcement activity, it does so *only* through Section 1692f(6). As for the remaining FDCPA provisions, 'debt collection' refers only to the collection of a money debt." *Id.*

Consequently, the Court **GRANTS** Defendants' motions and **DISMISSES** Plaintiff's fifth cause of action. To the extent his claim is premised upon an alleged violation of §§ 1692e(2)(A), 1692e(5), 1692e(10), and 1692f(1), his claim is dismissed with prejudice.

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant SLS's motion, **GRANTS** Defendant RTR's motion, and **DISMISSES** Plaintiff's five claims with leave to amend only to the extent discussed above. If Plaintiff wishes to file a First Amended Complaint, he must do so on or before **November 18, 2022**. Any amended complaint

will be the operative pleading as to all Defendants, and therefore all Defendants must then respond within the time prescribed by Federal Rule of Civil Procedure 15. Any defendants not named and any claim not re-alleged in the amended complaint will be considered waived. *See* CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled"). If Plaintiff fails to timely file a First Amended Complaint, or otherwise obtain an extension of time to do so, the Court may enter a judgment of dismissal and close this case.

**IT IS SO ORDERED**.

Dated: October 24, 2022

HON. MICHAEL M. ANELLO
United States District Judge