**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MATTHEW TURNER,<br><br>Plaintiff,<br><br>v.<br><br>REAL TIME RESOLUTIONS, INC., et al.,<br><br>Defendants. | Case No. 22-cv-1121-MMA (WVG)<br><br>**ORDER GRANTING DEFENDANT SPECIALIZED LOAN SERVICING, LLC'S MOTION TO DISMISS AND**<br><br>[Doc. No. 13]<br><br>**GRANTING IN PART DEFENDANT REAL TIME RESOLUTIONS, INC.'S MOTION TO DISMISS**<br><br>[Doc. No. 14] |

On November 18, 2022, Plaintiff Matthew Turner filed a First Amended Complaint against Defendants Real Time Resolutions, Inc. ("RTR") and Specialized Loan Servicing, LLC ("SLS" and collectively with RTR, "Defendants"). *See* Doc. No. 12 ("FAC"). Defendants now move to dismiss. *See* Doc. Nos. 13, 14. Both motions are fully briefed, *see* Doc. Nos. 15, 18–20, and the Court took the matters under submission and without oral argument pursuant to Civil Local Rule 7.1.d.1, *see* Doc. No. 21. For the reasons set forth below, the Court **GRANTS** SLS's motion and **GRANTS IN PART** RTR's motion.

## I. Background[1]

The factual background as alleged in the First Amended Complaint remains largely unchanged. Plaintiff is the owner of the real property located at 2906 Rancho Rio Chico, Carlsbad, California 92002 (the "Property"). FAC ¶ 5. Plaintiff purchased the Property in 1999 and has used it as his home and primary residence ever since. *Id.* ¶ 12. In November 2006, Plaintiff obtained a Home Equity Line of Credit with a credit limit of $100,000 secured by the Property pursuant to a Deed of Trust dated November 7, 2006 (the "HELOC" or "Loan"). *Id.* ¶ 13. The section 4 of the HELOC Loan Agreement provides:

> A. "I promise to pay to your order, when and as due, all loans made under this Agreement . . . I agree to make my payments in the manner specified in my periodic statement, and if I do so such payments will be credited as of the day of receipt."
> B. "At a minimum, you will send me a periodic statement monthly, except that my first periodic statement may be generated and mailed to me between thirty and sixty days after I open my Account. The periodic statement will show all Account activity during the billing cycle and contain other important information including my "New Balance," my Annual Percentage Rate, the amount of my "Minimum Payment Due," my "Payment Due Date" and the place and manner of making payments."

*Id.* ¶ 14.

Eventually, Plaintiff fell into financial hardship and, struggling to make payments, he filed for bankruptcy in 2009. *Id.* ¶ 15. Plaintiff's bankruptcy proceedings concluded in April 2009. *Id.*

In a notice dated February 16, 2010, Bank of America, N.A., who had been the servicer of Plaintiff's Loan, through its subsidiary, BAC Home Loans Servicing, LP,

---

[1] Because this matter is before the Court on a motion to dismiss, the Court must accept as true the allegations set forth in the Complaint. *See Hosp. Bldg. Co. v. Trs. of Rex Hosp.*, 425 U.S. 738, 740 (1976).

notified Plaintiff that the servicing of the HELOC was being assigned, sold, or transferred to RTR effective February 25, 2010 (the "Assignment Notice"). *Id.* ¶ 17. The Assignment Notice stated that RTR would begin accepting monthly payments on the HELOC Loan as of February 21, 2010, and would send billing statements going forward. *Id.* Plaintiff maintains that he did not receive the Assignment Notice until 2019, after he submitted a Qualified Written Request ("QWR"). *Id.*

Generally speaking, Plaintiff alleges that Defendants have presented conflicting information as to which entity held the servicing rights to Plaintiff's HELOC and at what point in time. *Id.* ¶ 20. For example, Plaintiff maintains that RTR and SLS were engaged in litigation from 2016 through 2021 concerning the servicing under the Collection Agreement. *Id.* ¶ 21. Plaintiff also contends that Defendants failed to provide periodic statements to him as required, and that he received little correspondence from RTR, specifically. *Id.* ¶ 22.

According to Plaintiff, he submitted three QWRs to RTR and all responses were deficient. In particular, Plaintiff alleges that RTR produced a portion of Collection Agreement between SLS and RTR. *Id.* ¶ 18. The Collection Agreement dated February 1, 2013, states that SLS is the servicer of the HELOC and that RTR was retained as its subcontractor with respect to collection and recovery. *Id.* ¶ 19. However, Plaintiff contends he was only provided three of the seventeen (17) pages. *Id.* ¶ 18. Plaintiff contends that RTR provided this document with a written response letter stating that it "effectively g[ave] us the right to service the account on [SLS's] behalf." *Id.*

In October 2018, Plaintiff submitted his first QWR to RTR. *Id.* ¶ 23. Plaintiff requested that RTR provide him with specific information and documents relating to his account including: identities of the investors, records of transfers and assignments of investor rights, amoritization schedules associating with the original loan and showing the accrual accounting on the original interest rate of the loan, documents relating to servicing transfers of the loan. *Id.* Plaintiff contends that RTR responded on October 15, 2018 that "RTR cannot speak to the servicing of this account prior to its

transfer." *Id.* ¶ 24. Plaintiff asserts that this response was inadequate. *Id.*

Plaintiff also alleges that RTR provided Plaintiff with a payoff quote dated October 4, 2018, which included a payoff amount of $153,445.37 including a principal of $100,000, interest of $52,715.61, and fees of $729.76, with an interest rate of 6.25%. *Id.* ¶ 25. Further, according to a statement dated January 1, 2019, Plaintiff allegedly owed $69,939.39 in arrears with an interest rate of 7.25%. *Id.* ¶ 26.

On May 3, 2019, Plaintiff submitted a second QWR requesting the same information above. *Id.* ¶¶ 27, 63. According to Plaintiff, RTR responded in June 2019 but did not supplement or otherwise "rectify" their prior response. *Id.* ¶ 64.

On August 31, 2021, Plaintiff received notice from a foreclosure trustee acting on behalf of RTR, noting that the principal balance on the HELOC was $170,858.84 and that RTR intended to proceed with foreclosure if Plaintiff did not reinstate the account by paying over $101,000 within 30 days. *Id.* ¶ 28.

In October 2021, Plaintiff sent a third QWR, requesting the same information, and RTR again declined to supplement or otherwise rectify their prior response. *Id.* ¶¶ 29, 65.

On October 28, 2021, an Assignment of Deed of Trust was recorded with the San Diego County Recorder's Office "wherein all beneficial interest under the Deed of Trust" was assigned to Defendant RTR. *Id.* ¶ 30. Plaintiff therefore contends that RTR has been a party to the Deed of Trust since at least October 28, 2021. *Id.* However, Plaintiff believes that RTR has been a party to the Deed of Trust since February 2010 and was the "you" identified above in section 4 of the HELOC Loan Agreement. *Id.*

On January 19, 2022, Defendants recorded a Notice of Default against the Property, noting that Plaintiff was $106,000 in default. *Id.* ¶ 31. Plaintiff alleges that this amount was grossly overinflated with fees and amounts not owed on the loan. *Id.*

On May 11, 2022, Defendants recorded a Notice of Trustee's Sale against the Property, setting the sale date of June 6, 2022, and noting a $175,809.93 unpaid balance. *Id.* ¶ 32. Plaintiff alleges he is facing the loss of his home, *see id.* ¶ 33, but acknowledges that he paid the reinstatement amount in order to avoid foreclosure, *see id.* ¶ 56.

On May 19, 2022, Plaintiff initiated this action in the Superior Court of California, County of Orange. *See* Doc. No. 1-1. On August 1, 2022, SLS removed the action to this Court, *see* Doc. No. 1, and RTR joined in the removal, *see* Doc. No. 1-3. The Court previously granted Defendants' motions to dismiss, *see* Doc. No. 11 (the "Dismissal Order"). On November 18, 2022, Plaintiff filed a First Amended Complaint. *See* FAC.

## II. Legal Standard

A Rule 12(b)(6)[2] motion tests the legal sufficiency of the claims made in a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). However, plaintiffs must also plead "enough facts to state a claim to relief that is plausible on its face." Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard demands more than "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Instead, the complaint "must contain allegations of underlying facts sufficient to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In reviewing a motion to dismiss under Rule 12(b)(6), courts must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). The court need not take legal conclusions as true merely because they are cast in the form of factual allegations. *See Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

---

[2] Unless otherwise noted, all "Rule" references are to the Federal Rules of Civil Procedure.

Where dismissal is appropriate, a court should grant leave to amend unless the plaintiff could not possibly cure the defects in the pleading. *See Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)).

### III. REQUESTS FOR JUDICIAL NOTICE

As an initial matter, both RTR and SLS have filed requests for judicial notice in conjunction with their motions. *See* Doc. Nos. 13-1, 14-2. Plaintiff has not responded or otherwise opposed either request.

Generally, the scope of review on a motion to dismiss for failure to state a claim is limited to the contents of the complaint. *See Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1141 n.5 (9th Cir. 2003). However, a court may consider certain materials, including matters of judicial notice, without converting the motion to dismiss into a motion for summary judgment. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b); *see also Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (quoting Fed. R. Evid. 201(b)). Further, "a court may consider evidence on which the complaint necessarily relies if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (quoting *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (internal quotation marks omitted)).

SLS asks the Court to judicially notice seven exhibits: (1) Deed of Trust recorded on November 13, 2006; (2) Bankruptcy Court Order granting discharge under 11 U.S.C. § 727 entered on April 7, 2009, in the United States Bankruptcy Court, Case No. 09-00054-LA7; (3) Assignment of Deed of Trust recorded on October 28, 2021; (4) Substitution of Trustee recorded on January 19, 2022; (5) Notice of Default and

Election to Sell Under Deed of Trust recorded on January 19, 2022; (6) Notice of Trustee's Sale recorded on May 11, 2022; and (7) Notice of Rescission of Notice of Default recorded on June 10, 2022. *See* Doc. No. 13-1 ("SLS Exs.") 1–7. RTR asks the Court to judicially notice the same Notice of Rescission of Notice of Default recorded on June 10, 2022 that SLS submits as Exhibit 7, *see* Doc. No. 14-2 ("RTR Ex.") 1, and the October 28, 2022 Assignment of Deed of Trust that SLS submits as Exhibit 3, *see* RTR Ex. 3, as well as the HELOC Loan Agreement, *see* RTR Ex. 2.

The Court has already granted Defendants' requests as to SLS's Exhibits 1, 2, 3, 5, 6, and 7 and RTR's Exhibits 1 and 3 and for those same reasons **GRANTS** their requests here. *See* Doc. No. 11 at 5–6.[3] As to SLS's Exhibit 4, the Court finds that the January 19, 2022 Substitution of Trustee is a public record that is not in dispute, nor can reasonably be questioned. *See Koja*, 899 F.3d at 999. Further, the Court finds that Plaintiff incorporates the HELOC Loan Agreement, RTR's Exhibit 2, by reference in the First Amended Complaint. *See, e.g.*, FAC ¶ 14. Accordingly, the Court **GRANTS** Defendants' requests as to these documents as well.

## IV. D<span>ISCUSSION</span>

By way of his First Amended Complaint, Plaintiff asserts the following claims: (1) breach of contraction against RTR; (2) violation of California Civil Code § 2924c–d against both Defendants; (3) violation of 12 U.S.C. § 2605 *et seq.* against RTR; and (4) violation of California Unfair Competition Law, Cal. Civ. Code § 17200 *et seq.* against both Defendants.[4] Defendants SLS and RTR now move to dismiss all claims against them. The Court addresses each claim as it relates to each Defendant in turn.

---

[3] All citations to electronically filed documents refer to the pagination assigned by the CM/ECF system.
[4] As SLS and RTR note, in the caption of the FAC, Plaintiff identifies a fifth cause of action for violation of the Fair Debt Collection Practices Act. *See* Doc. No. 12 at 1. However, the Court previously dismissed this cause of action with prejudice "[t]o the extent his claim is premised upon an alleged violation of §§ 1692e(2)(A), 1692e(5), 1692e(10), and 1692f(1)." Doc. No. 11 at 19. Plaintiff has removed this claim from the body of his pleading and there are no other allegations supporting an

### A. Breach of Contract

Plaintiff's first cause of action is for breach of contract against RTR. RTR contends that Plaintiff did not cure the defects noted in the Dismissal Order and advances the following arguments: (1) it is not a party to the HELOC Loan Agreement; (2) Plaintiff was in breach of the HELOC Loan Agreement prior to the time of RTR's alleged breach; and (3) the claim is time-barred. *See* Doc. No. 14-1 at 8–12.

To state a claim for breach of contract under California law, a plaintiff must allege: "(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff therefrom." *Wall Street Net., Ltd. v. N.Y. Times Co.*, 80 Cal. Rptr. 3d 6, 12 (Ct. App. 2008).

As with the original Complaint, Plaintiff pleads that section 4 of the HELOC Loan Agreement provides:

> you will send me a periodic statement monthly . . . . The periodic statement will show all Account activity during the billing cycle and contain other important information including my "New Balance," my Annual Percentage Rate, the amount of my "Minimum Payment Due," my "Payment Due Date" and the place and manner of making payments.

FAC ¶ 14; *id.* ¶ 37. Plaintiff further pleads that RTR breached this provision by failing to provide Plaintiff with any periodic statements. *Id.* ¶ 38.

In the Dismissal Order, the Court dismissed this claim for, among other things, failure to plead that RTR was a party to the HELOC Loan Agreement. *See* Doc. No. 11 at 7. In response, Plaintiff now pleads the following:

> On October 28, 2021, an Assignment of Deed of Trust was recorded with the San Diego County Recorder's Office wherein all beneficial interest under the Deed of Trust was assigned to Defendant RTR. Thus, at least since October 28, 2021, Defendant RTR was a party to the Deed of Trust. However, Plaintiff

---

FDCPA claim. Thus, retention of this cause of action in the caption appears to have been an inadvertent error.

is informed and believes, and thereon alleges, that Defendant RTR has been a party to the Deed of Trust since February 2010, when it became the servicer of the Deed of Trust and that, as the servicer of the loan, RTR was the "you" identified in Section 4 of the HELOC Loan Agreement that was required to send periodic statements to Plaintiff.

FAC ¶ 38.

The Court disregards Plaintiff's allegation that RTR is the "you" identified in section 4 of the HELOC Loan Agreement. Plaintiff's own allegations reveal that RTR was not the original lender and thus not the "you" in 2006 when the Agreement was executed. *See* FAC ¶ 17; *see also* RTR Ex. 2 (providing that the "you" in the HELOC Loan Agreement refers to First Capital Group). Further, contrary to Plaintiff's contention, RTR did not become a party to the Deed of Trust in February 2010 when Plaintiff alleges it became the servicer of the Loan. *See Householder v. Specialized Loan Servicing Llc*, No. CV 21-1008-DMG (SKx), 2021 U.S. Dist. LEXIS 246712, at *9 (C.D. Cal. June 3, 2021) ("[U]nder California law, a borrower cannot bring a claim for breach of contract against a loan servicer based on the deed of trust because a loan servicer is not a party to the deed of trust itself.") (citing *Conder v. Home Sav. of Am.*, 680 F. Supp. 2d 1168, 1174 (C.D. Cal. 2010)).

Even assuming the October 2021 assignment of the Deed of Trust made RTR a party to the HELOC Loan Agreement, and thus obligated RTR to send periodic statements, Plaintiff has not stated a breach of contract claim. "[I]t is elementary that one party to a contract cannot compel another to perform while he himself is in default." *Durell v. Sharp Healthcare*, 108 Cal. Rptr. 3d 682, 697 (2010) (citations omitted). Plaintiff admittedly breached the Agreement in 2009 when he stopped making mortgage payments due to financial hardship. *See* FAC ¶ 15. The Court noted this defect in the Dismissal Order. *See* Doc. No. 11 at 8–9. Yet Plaintiff still does not plead that he resumed making payments at any time, let alone prior to the assignment. Thus, his failure to perform under the contract appears to have taken place long before any alleged breach by RTR.

Plaintiff does not cure this fatal defect by now pleading that his performance "was excused by virtue of the fact that, by failing to send Plaintiff periodic statements, Plaintiff was unable to make payments under the Deed of Trust," or that RTR "interfered with Plaintiff's performance by failing to send Plaintiff the monthly statements." FAC ¶ 40. Under California law, one party's material breach of a contract excuses the other party's duty to perform. *See Brown v. Grimes*, 120 Cal. Rptr. 3d 893, 902 (2011). However, accepting Plaintiff's factual allegations as true, he was in breach of the HELOC Loan Agreement before RTR was assigned the Deed of Trust. That RTR did not send periodic statements beginning October 2021 is not a plausible excuse for Plaintiff's non-performance beginning in 2009. *See Lortz v. Connell*, 78 Cal. Rptr. 6, 9 (1969). Therefore, to the extent the HELOC Loan Agreement was breached, it appears from the face of the pleadings that Plaintiff would be the party in breach, and RTR the party discharged from performance. *See James River Ins. Co. v. Medolac Labs.*, 290 F. Supp. 3d 956, 970 (C.D. Cal. 2018). Consequently, Plaintiff fails to plausibly allege his performance or excuse for nonperformance prior to RTR's alleged breach and therefore fails to state a claim for breach of contract. Accordingly, the Court **GRANTS** RTR's motion on this basis and **DISMISSES** Plaintiff's breach of contract claim. As it is clear Plaintiff cannot cure this defect, dismissal is without leave to amend.

**B.     California Civil Code § 2924c–d**

Plaintiff's second cause of action is against both Defendants for violation of California Civil Code § 2924c–d. The Court previously dismissed this claim "because Plaintiff fail[ed] to plead that either RTR or SLS recorded a notice of default and/or sale that included costs, expenses, or other amounts impermissible under California Civil Code § 2924c–d." Doc. No. 11 at 10.

As the Court noted in the Dismissal Order, "California Civil Code § 2924 *et seq.* outlines the steps that make up a foreclosure proceeding in the state of California." *Brewster v. Sun Tr. Mortg., Inc.*, 742 F.3d 876, 879 (9th Cir. 2014). "Civil Code sections 2924c and 2924d [ ] regulate costs that may be charged to a borrower only after notices

of default and sale have been recorded." *Walker v. Countrywide Home Loans, Inc.*, 121 Cal. Rptr. 2d 79, 90 (2002). Namely, California "Civil Code section 2924c refers to the payment of the amount due as 'shown in the notice of default,'" and section 2924d delineates the specific costs and expenses that may be included for reinstatement. *Id.*; Cal. Civ. Code, § 2924d. "After the notice of default is recorded, borrowers are responsible only for the amounts stated in the notice of default plus specific costs and expenses delineated by statute." *Id.*

Plaintiff now alleges that on January 19, 2022, Defendants caused a Notice of Default to be recorded against the Property, noting the amount in default was approximately $106,000. FAC ¶ 52. Plaintiff asserts that this amount "was grossly overinflated with fees and amounts not owed on the loan." *Id.* Plaintiff contends he nonetheless paid the reinstatement amount to avoid foreclosure. *Id.* ¶ 56.

As an initial matter, Plaintiff does not plausibly plead that SLS violated California Civil Code sections 2924c–d. Plaintiff repeatedly asserts that "Defendants" caused the Notice of Default to be recorded and demanded that Plaintiff pay impermissible amounts to reinstate the Loan. *See, e.g.*, FAC ¶¶ 51–53. However, this assertion is belied by the judicially noticed records. Namely, the Deed of Trust was assigned to RTR, *see* SLS Ex. 3, RTR substituted ZBS Law, LLP as trustee, *see* SLS Ex. 4, and ultimately ZBS Law, LLP recorded the Notice of Default, *see* SLS Ex. 5. Additionally, Plaintiff pleads that ZBS Law was the foreclosure trustee acting on behalf of RTR, *see* FAC ¶ 28, not SLS. Plaintiff's conclusory allegations that SLS was involved in the foreclosure process are insufficient. "Furthermore, this claim is not saved by Plaintiff's agency allegations because, again, they are nothing more than formulaic conclusion." *Morici v. HashFast Techs. LLC*, No. 5:14-cv-00087-EJD, 2015 U.S. Dist. LEXIS 24251, at *16 (N.D. Cal. Feb. 27, 2015). Accordingly, the Court **GRANTS** SLS's motion and **DISMISSES** Plaintiff's second cause of action against SLS without leave to amend.

Turning to RTR, the factual basis of Plaintiff's claim is not clear. Plaintiff again summarily alleges that RTR violated sections 2924c–d by "demanding from Plaintiff

exorbitant amounts in arrears," FAC ¶ 51, and including in the Notice of Default an amount that was "grossly overinflated with fees and amounts not owed on the loan, *id.* ¶ 52. This is insufficient.

Neither section 2924c nor 2924d regulate charges, costs, or fees that are incurred before recordation of a notice of default or notice of sale. *See Walker*, 121 Cal. Rptr. 2d at 90. Instead, they limit charges incurred after a notice of default or sale are recorded— *i.e.*, those costs associated with the foreclosure process. For example, section 2924c provides that a mortgagor may cure a default by paying the amount in default plus "reasonable costs and expenses" to reinstate the loan. *See id.* at 89. Under this section, "[t]he reasonable costs and expenses to which the mortgagor is limited to recovering are those 'incurred for recording, mailing, including certified and express mail charges, publishing, and posting notices . . . and a fee for a trustee's sale guarantee or, in the event of judicial foreclosure, a litigation guarantee.'" *Id.* at 89–90 (quoting Cal. Civ. Code, § 2924c(c)). "[S]ection 2924d also contains this limitation on the reasonable costs a lender may charge to a borrower seeking to redeem property after a notice of sale has been recorded." *Id.* at 90.

Nothing in these sections regulate costs and fees associated with the pre-recordation default. *See Jones v. Union Bank of Cal.*, 25 Cal. Rptr. 3d 783, 788 (Cal. Ct. App. 2005) ("Civil Code sections 2924c and 2924d provide for maximum sums that may be claimed as expenses of foreclosing on the property. These maximum amounts do not include other costs, including legal fees, which may be incurred by a creditor in protecting the security."); *see also See Walker* 121 Cal. Rptr. 2d at 90 (citing *Bruntz v. Alfaro*, 260 Cal. Rptr. 488, 494 (Cal. Ct. App. 1989) (explaining that section 2924c limits costs and trustee's or attorney's fees which may be claimed as foreclosure expenses, but does not limit other expenses "incurred for other purposes")). For example, it is well-settled that these sections do not limit or otherwise prohibit charging a borrower the attorney's fees incurred in pre-recordation protection of the obligation as a condition of reinstatement. *See Walker*, 121 Cal. Rptr. 2d at 90. Additionally, as Plaintiff recognizes,

<hr/>
<hr/>

section 2924c expressly permits inclusion of all reasonable costs and expenses that are actually incurred in enforcing the terms of the obligation, deed of trust, or mortgage as a condition of reinstatement.  *See* FAC ¶ 49.  Thus, to the extent Plaintiff challenges the accounting of arrears included in the $106,470.73 reinstatement amount in the Notice of Default or other pre-recordation costs or fees charged, *see* FAC ¶ 52 (asserting that the reinstatement amount included "fees and amounts not owed on the loan"); *id.* ¶ 54 (alleging that Defendants continued with the foreclosure process "on an inaccurate default and after having made inflated demands"), sections 2924c–d are not the appropriate vehicle.  In order to state a claim under sections 2924c or 2924d, Plaintiff must plausibly allege that the Notice of Default and/or Notice of Sale stated amounts that included post-recordation fees and costs associated with foreclosure that exceed what is authorized under those statutes.  Fatally, Plaintiff does not.  *See Dandridge v. Select Portfolio Servicing, Inc.*, No. EDCV 22-985-GW-SHKx, 2022 U.S. Dist. LEXIS 186916, at *22 (C.D. Cal. Oct. 12, 2022) (dismissing claim where the plaintiff "fail[ed] to allege any facts pertaining to the circumstances of the 'grossly inflated' amount").

It is abundantly clear that Plaintiff seeks to challenge the amount he paid to reinstate his HELOC.  *See* Doc. No. 15 at 10 (arguing in opposition that Plaintiff has stated a claim under section 2924c because RTR recorded a Notice of Default with an inaccurate statement of arrears).  However, Plaintiff does not argue or plausibly assert that the recorded notices contained post-recordation foreclosure-related charges.  Plaintiff contends in opposition that he has no obligation to "know the precise amount" that was required to reinstate the loan and asserts that he is unable to plead such information because "RTR has failed to provide the account history and detailed reinstatement quote."  Doc. No. 15 at 10.  However, the allegation that an amount charged for reinstatement is "exorbitant," *see* FAC ¶ 51, does not factually or plausibly support the claim that the notices stated amounts that included specific charges limited under a particular statute.  Rather, these allegations are conclusory and do not state a claim under sections 2924c–d.  *See Iqbal*, 556 U.S. at 678.  Consequently, the Court **GRANTS** RTR's

motion and **DISMISSES** Plaintiff's second cause of action. Because it is clear Plaintiff cannot cure this defect, dismissal is without leave to amend.[5]

### C.    12 U.S.C. § 2605

Plaintiff's third cause of action is against RTR for violation of the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. § 2601 *et seq*. ("RESPA"). RESPA imposes certain duties on loan servicers regarding borrowers' accounts and in response to their inquiries. *See generally* 12 U.S.C. § 2605. In particular, § 2605(e) creates a private right of action for the failure by a loan servicer to comply with the statutory requirements in responding to a QWR for information about the servicing of a loan. 12 U.S.C. § 2605(e).

RTR is correct that Plaintiff's October QWR is time-barred. *See* Doc. No. 14-1 at 13. In the Dismissal Order, the Court held that this QWR and RTR's corresponding response are untimely given the statute's three-year statute of limitations. *See* Doc. No. 11 at 12. The Court will not revisit that holding here.

Plaintiff now pleads that RTR responded to his second QWR in June 2019, *see* FAC ¶ 64, and to his third QWR sometime after October 2021, *see id.* ¶ 65. These allegations are facially timely. Plaintiff also now adequately pleads specific damages. *See id.* ¶ 68.

The Court previously dismissed Plaintiff's RESPA claim because, among other things, he failed to plead what information he sought and that RTR did not explain why such information was not available. *See* Doc. No. 11 at 14. Plaintiff now alleges that he requested specific information, including "identities of the investors, records of transfers and assignments of investor rights, amoritization schedules associating with the original loan and showing the accrual accounting on the original interest rate of the loan,

---

[5] This ruling is without prejudice to Plaintiff filing a properly supported motion for leave to amend should discovery produce evidence supporting a cause of action related to the accounting and/or reinstatement of Plaintiff's HELOC.

documents relating to servicing transfers of the loan." FAC ¶ 61. Plaintiff pleads that "a significant amount of the requested information was not addressed in the handful of documents produced by RTR." *Id.* ¶ 61.

It is not enough that RTR did not provide all of the requested information. RESPA mandates that the servicer either provide all information in its possession that is responsive to a request related to the servicing *or* explain in writing why such information is unavailable. 12 U.S.C. § 2605(e)(2)(C); *see also Hueso v. Select Portfolio Servicing, Inc.*, 527 F. Supp. 3d 1210, 1223 (S.D. Cal. 2021). Plaintiff does not specifically plead that RTR did not explain in writing why certain information requested was unavailable. In fact, Plaintiff pleads that RTR offered some explanation: that it "cannot speak to the servicing of this account prior to its transfer to our company." FAC ¶ 62. This appears to be a written response explaining why some information was not provided. Moreover, the Court agrees with RTR that some of the information requested does not appear to relate to the servicing of the Loan. *See* Doc. No. 14-1 at 15.

That said, Plaintiff plausibly pleads a RESPA violation. Although he does not detail what RTR failed to provide, he alleges that RTR did not address a significant amount of the requested information. *See* FAC ¶ 62. He also asserts, for example, that RTR provided three pages of a seventeen (17) page Collection Agreement with redactions. *See id.* ¶ 66. Plaintiff contends that this was an incomplete production, *see id.*, and as pleaded, RTR's written response does not explain why the entirety of the document was unavailable.

RTR argues that it was not required to provide the Collection Agreement, *see* Doc. No. 14-1 at 14, and the parties dispute the application of the Consumer Financial Protection Bureau's Regulation X, 12 C.F.R. § 1024.36. A request for information about the identity of the servicer by seeking "documents related to the servicing transfers of the loan," FAC ¶ 61, would appear to fall squarely within the category of "information relating to loan servicing," 12 U.S.C. § 2605(e)(1)(A); *see also Hueso*, 527 F. Supp. 3d at 1222. However, the Court declines to reach the issue of whether RTR was required to

provide an entire copy of this document as it is better suited for summary judgment. It is sufficient to survive dismissal that Plaintiff pleads he requested information from RTR that appears related to the servicing of the Loan, that RTR did not provide all of the requested information within its possession, and that RTR's written response did not explain why certain information it did not provide was unavailable. Accordingly, the Court **DENIES** RTR's motion as to Plaintiff's RESPA claim.

### D.  California Business and Professions Code § 17200

Fourth, Plaintiff alleges that both Defendants violated California's Unfair Competition law, California Business and Professions Code § 17200 *et seq.* ("UCL"). As the Court previously noted, the UCL prohibits three types of conduct: "unlawful," "unfair," and "fraudulent." *See Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (Cal. 1999) (quoting *Podolsky v. First Healthcare Corp.*, 58 Cal. Rptr. 2d 89, 98 (1996)) ("Because Business and Professions Code section 17200 is written in the disjunctive, it establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent."); *see also Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012) (same).

Plaintiff summarily pleads that he brings his UCL claim pursuant to all three prongs, *see* FAC ¶ 70, however substantively, he only pleads an unlawful UCL violation, *see id.* ¶¶ 71–74. Under the unlawful prong, the UCL "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (Cal. 1999) (internal quotations omitted).

The Court **GRANTS** SLS's motion and **DISMISSES** Plaintiff's UCL claim against SLS without leave to amend, as Plaintiff has not pleaded any predicate claim against SLS. Further, as explained above, Plaintiff has stated a RESPA claim against RTR and therefore, has plausibly stated a claim for violation of the unlawful prong of California's UCL against it. Accordingly, the Court **DENIES** RTR's motion on this basis.

## V. Conclusion

For the foregoing reasons, the Court **GRANTS** Defendant SLS's motion and **GRANTS IN PART** Defendant RTR's motion. Specifically, the Court **DISMISSES** Plaintiff's California Civil Code § 2924c–d claim and UCL claim against SLS **without leave to amend**. The Court **DISMISSES** Plaintiff's breach of contract claim and California Civil Code § 2924c–d claim against RTR **without leave to amend**. Finally, the Court **DENIES** RTR's motion as it relates to Plaintiff's RESPA and UCL claims against RTR. RTR must file and serve its Answer on or before **March 10, 2023**.

**IT IS SO ORDERED**.

Dated: February 24, 2023

HON. MICHAEL M. ANELLO
United States District Judge